The Honorable Judges of the United States Court of Appeals in and for the Southern Judicial Circuit. Eerie, eerie, eerie. All persons having business before the Sonoma Court are advised to draw near and give their attention. As the Court is now sitting, God save the United States and Sonoma Court. Good morning, ladies and gentlemen. Our first case for argument is CSX Transportation v. Zayo Group. Mr. Skorda. Thank you, Your Honor. May it please the Court, Counsel Michael Skorda here on behalf of the appellant CSX Transportation. Your Honor, this Court should reverse the judgment below which would allow any third party to dig under tracks, place objects or structures above tracks at any level without permission or even knowledge by the railroad. None of the parties cite a case for that proposition. This would be the first precedential decision to read the easement right of exclusion for railroads so narrowly as to disallow that right of exclusion. And that's with good reason. As courts have recognized since the dawn of railroading and continue to recognize today, railroad easements are robust and they provide for complete… The fact that it's a railroad easement… No, I'm asking a legal question. Is there anything in Indiana law that's specific to railroad easements as opposed to, say, an easement for an electric line? Thank you, Your Honor. Yes. Starting with the case of Jones from the Indiana Supreme Court in 1882, the Court described that there is a spectrum of easements and that railroad easements in particular lie at one end of that spectrum as being particularly robust. Let's just say there weren't any electricity easements in 1882. Is there anything at a time when there are gas pipelines and electric lines and phone lines and you name it in which Indiana has distinguished railroad easements from others? Let me tell you why I'm asking this question. There is nothing more common than transportation easements crossing each other. If you just look at a street, there will be a telephone line crossing a phone line. And the proposition that whoever has an easement for a transportation corridor can exclude all other comers would just bring comers to a total halt. Right, Your Honor. Well, the alternative, though, that there be a patchwork of fee and thousands of easements… I'm not asking about the alternative, right? I am asking a legal question about Indiana law. Since the time when there were electricity and phone and gas lines, have the Indiana courts said there's something special about railroad lines? They have, Your Honor. I can't say they've said there's something different from a railroad line specifically and another type of, say, energized line. But in cases like Ritz, for example, the Indiana Court of Appeals said that the railroad easement included the right to license and permit a telephone line. Would the Indiana Supreme Court's case Howard v. United States be helpful? Absolutely, Your Honor. Howard is a rails-to-trails case, but part of Howard describes what is the permissible scope of a railroad easement under Indiana law. And the court says that because one of the purposes historically of railroads has been communication, in today's modern era, the fiber optic cables and other means of communication fall within the scope of a railroad easement specifically. So Howard is very much in step with our view here. Doesn't that depend on the language of the easement? It doesn't, Your Honor. In fact, all of these cases going back… Did you say it does not or it does? I'm sorry. It does not. Now, it's not to say an easement could not specifically limit a particular use, but when it comes… all of these cases, from Jones to the modern day, to Ritz, and the U.S. Supreme Court as recently as Brandt, they've said that we're looking at a common law definition of a railroad easement. But particularly for Indiana. Let's direct us back to Indiana where Judge Easterbrook was headed. Absolutely, Your Honor. The Ritz decision says, let's look at the purpose of the railroad easement in that case. And railroad easements include means of communication. And under those circumstances, the court says, look, have you been coming to us with fiber optics or something else? That would be within the scope of a traditional railroad easement, which robustly includes those other matters. And I should add that if anything, over time… That's actually why I asked my question. Suppose the easement is to lay a phone line, which is for communications. On your view, it sounds like that would prevent any other line from crossing the phone line. And there is almost nothing more common these days than a phone line and the need for other, say, electricity lines to cross it. Right. And we have cases… I mean, there are examples where the crossing… For example, there's the Louisville case that deals with the crossing under of a rail permitted by statute. And what was required in that case was that there be contact with the rail carrier to ensure safety, to ensure that operations would be unimpeded. The idea here, and this is repeated as recently as the Ninth Circuit in Alaska, is that there's something… Is the Ninth Circuit interpreting Indiana law? They're not, Your Honor. They're talking about… Or is Kentucky interpreting Indiana law? I'm really interested in Indiana law. This case began with Illinois and Indiana, and Illinois got carved off precisely because state laws are different. We really need to focus on Indiana. I completely agree, Your Honor, and that the Ritz case, the Howard case, and again, we're getting back to Jones. And I should add, it's not just Indiana common law. We're also talking about Indiana statutory law. The Indiana Abandonment of the Rights of Way Act clearly contemplates what does it provide. It provides that fiber optic cables remain that a license issued by a railroad with a railroad easement, when that easement is abandoned, the licensing right for that fiber optic cable remains in effect. The Calumet National Bank case, that's the Indiana… How does CSX's theory of railroad easement, I guess, square with Howard's description of a railroad easement's purpose? Well, the railroad easement in Howard, they're talking expansively about, look, had this been a telecommunications methodology infrastructure, that would be protected. That would fall within the scope. What Howard does by saying the purpose is broad enough to include even communication, it clearly includes the operation of the railroad. And today, the evidence in the case, and this is not contradicted, is that a lot of the infrastructure for railroads is both above and below the track. We have many, many instances where… But Howard and the Supreme Court in Indiana says it is well established, and I'm reading from Howard, that easements are limited to the purpose for which they are granted. Absolutely. And so, I guess, what would expand that to include… Sure. Go ahead. Two points, Your Honor. One, in context, the court interprets that phrase, the purpose for which it is granted. Now, bear in mind, this is particular to that abandonment act, and so this is a bit of a gloss on what even the common law would say in this regard. But even if we limit it to the purpose, Howard is saying it's not just operating the railroad, it includes communication. And our point would be cases like, and I realize this is not an Indiana case, so I'm citing it merely for its logic and persuasive authority, but cases like LKL that have made the point that total exclusion from the property is the railroad purpose. It's part and parcel of the purpose because they have their signaling lines, they have their positive train control, a federally mandated safety system. All of that is below surface. They have other critical infrastructure that exists above the surface of the railroad. And so, Howard is very much in favor of our position by understanding that the railroad is not limited to the tracks. It's limited more broadly to the purpose of the railroad easement. Now, again, that was a statutory case. I would argue that common law goes further than just limited to that narrow purpose, but even if we take Howard as the expression of Indiana common law on this point, it easily permits the safe operation of the railroad. And that would include both subsurface and aerial rights. As I said, the Indiana statute is completely in step with that. Calumet National Bank from the Indiana Supreme Court in 97 makes no sense if railroads do not have the right to license subsurface fiber optic and other communication and aerial communication. Is it possible then to have the right to license without the right to exclude? So, our view, Your Honor, is that the obverse can be true. That is, as the Tenth Circuit noted in LKL, and again, we don't have an Indiana case that distinguishes between the two. LKL talks about the fact that, in that case, they allowed the railroad to exclude a distribution center, although they recognize that the distribution center was so far apart from anything having to do with the safe operation of the railroad that the railroad did not have the right to license the distribution center. So, in that regard, there is at least a case and logic behind the possibility of a right to exclude without a right to license. I don't think that's a world in which any utility would wish to live because it would mean that railroads could exclude, but then they would have to negotiate individually with thousands and thousands of fee simple owners along the railroad corridor in order to lay their cable. So, I doubt that is a world that either party would see as fit, particularly utilities. I should note, too, that this system has been working very, very well. This is an easy system. You apply online what the railroad does. The railroad's underground infrastructure, by the way, is not publicly available for national security reasons. Parts of that infrastructure is not something you could call Julie and find out that that's where it is underneath your, you know, where it's located in the railroad easement. And so, what happens is you apply. There's a routine system. I understand it's rather quick. Engineers review the proposed laying of cable or putting cable aerially, and if it's approved, they send an engineer, and then, if needed, they send other personnel from the railroad to ensure that trains are not coming by during the installation. And, of course, we've seen examples where, as provided by the amicus, and some are also summarized in our opening brief, examples in which the railroad is unaware of digging, and you have instances of subsidence. You have instances of train crews or installation crews, rather, being injured. So, to return to the question that led this all off, has Indiana law, yes, it has treated railroad easements differently. It has done so as recently as Howard, where the court recognized that that purpose is not just the safe operation of the railroad, but goes even further. But here, we could say, if we wanted to, that the purpose is simply the safe and effective operation of the railroad. And under those circumstances, we would still say this easily satisfies that standard. Again, there's no evidence to contradict the fact that there is a possibility, certainly, and we've seen it manifest, of danger to safety and the fair operation, including by ZAO at one of our sites where our signaling lines were cut during an unauthorized installation. I was aiming to reserve three minutes. Unless the court has questions, I'm happy to do so. Thank you, Your Honor. Thank you, counsel. Ms. Benz. Thank you, and may it please the court. My name is Teresa Warden Benz, appearing for ZAO Group. CSX is obviously a railroad and not a real estate company. Under established Indiana law, it has rights to the surface of its easements for use in the construction, repair, or operation of its railroad. Indiana law does not grant CSX an exclusive property interest in the ground below or air above its easements, which is the only place where ZAO's fiber optic cables can be found. And because CSX is not in the telecommunications business, Indiana law does not permit them to license their easements for installation of fiber optic cable. Indiana law also forecloses CSX's untimely claims for those sites where it had a fee property interest to protect. This court should reject CSX's request to expand Indiana law to create property interests that did not previously exist so that they can charge licensing fees or offend established statute of limitations principles. CSX's claims of practicality and their generalized safety concerns may be arguments for a legislature, but particularly on this record where they prove no safety concerns and no imminent harm. They do not support judicially expanding its rights under Indiana property law. Is it a position then that this notion that it could happen, I think that could be a safety concern, that that's not enough for us to assume that that ZAO's installation was a violation of that purpose. So we're not disagreeing that that could be a purpose. Go ahead, I'm sorry. That safety could be a purpose of the railroad, not in the sense of driving the scope of the easement. Because again, Indiana law in cases like Howard and Julian has always said that the purpose of the easement that's granted to the railroad is to operate, construct, maintain a railroad. And that does include safety, of course, and that's why practically speaking under Indiana law, the surface is pretty exclusive to the railroad because you've got to keep people off the tracks, you've got to keep things off the tracks in order to operate a train safely. But that doesn't extend to the ground below or above. And to answer your safety question, here we've got hypothetical safety concerns. Things that happened to other telecommunications companies, things that happened outside of the state of Indiana with the one instance that involved ZAO, those aren't enough as a district court found to establish standing, much less to allow this court to expand Indiana law to create a new right that would then allow the railroads to charge licensing fees. And it also ignores that there are existing rules and regulations. In fact, the Indiana gas case from the Indiana Supreme Court talks about how railroads and utilities can coexist because they do run along the same lines and they do cross over each other and they're both public utilities, public services. And so the Indiana Supreme Court there said, if you're a telecommunications, if you're a utility, you can operate on the public right-of-way and cross the railroad without paying the railroad, without even getting the railroad's consent because that's permissible given the structure around working within a public right-of-way. There's regulations there. There's call before you dig. There's other things that are providing that safety mechanism so that these two things can operate together. What you can't have is a railroad saying, if you want to cross our line or if you want to even go along our line for 1,000 feet, you're going to have to pay us $428,000 to do that. That is going to stunt the growth of telecommunications. That's going to lead to outcomes that Indiana gas didn't envision. And here there's a lot of talk and allegations in the briefing and the complaint that say ZAO somehow operates in the middle of the night and does this in secret, but in reality it's operating along public right-of-ways most of the time and there's occasional intersections with other interests including railroads or private landowners. I saw that $428,000 number and is there anything in the record that breaks that down in any way? Because I understand from a safety perspective CSXT would like to be there, have their engineers look, make sure ZAO is not hitting anything underground. I mean that seems like a viable important purpose because you don't want signals going out, right? And so that $428,000, what's the connection to safety in the record if there is any? I don't know that there's record evidence on where that number is derived from. There may be and I'm not aware of it. It wasn't the focus of the briefing. But the important point is they don't need that licensing fee to ensure the coordination to ensure safety. At the Jackson Street site in Indiana, which is sort of the genesis of this case, ZAO was working with CSX and paying engineering review fees and other types of fees to coordinate with the railroad. Because of course they want the expertise of the railroad. These are not things that just spring up. They're a long plan. They involve engineers. You're working with what's in the ground, what's above ground, what are the constraints in property laws. So they were working with CSX and paying them for their time and that always occurs. And there's incentives for that to occur because ZAO wants to avoid tort liability as well, avoid other types of liability. So they are working with the railroad and it doesn't take that additional licensing fee to make that work. And in order to charge that licensing fee, CSX needs to have a property right. And they don't have a property right to the surface below and the air above under Indiana law. Their easements don't extend that far because they don't need those areas for the construction, operation, maintenance of its railroad. And so you have case law that in Indiana, like Cleveland v. Simpson, Cleveland v. Smith, early 1900s cases, that are talking about the fact that the railroad does have exclusive right to the surface because it's integral to its purpose. But then the landowner gets the rest and the landowner can do whatever it wants as long as it's not interfering with the railroad. And those guardrails still exist without the rule that CSX is asking for because ultimately whatever is being done along or near a railroad has to be done with that precept in mind that you can't interfere with the core functions of the railroad. And so that also protects against safety incidents because those things are interconnected and they just simply don't require charging licensing fees. I thought many of these installations happened without CSXT's knowledge. They make that claim and the record with respect to these sites, it has some development of some coordination with CSX, some not. But the point is nothing happened at those sites. Whatever coordination there was, nothing occurred. But is there any evidence? We have to base this on the record. Is there any evidence that this coordination is happening, that Zio is voluntarily going to CSXT and communicating on every installation on safety issues so that they don't hit a signal? There is evidence of coordination for sure. Site to site, not specifically. But in some of these sites, for instance, the Jackson Street site, Zio believed it was operating within the right of way, the public right of way, which requires different coordination with the government. And so it was proceeding that way but also coordinating with CSX. But ultimately the coordination isn't what is determinative in this case because the determination this court has to make is whether or not CSX has this property right to the places where Zio's fiber optic cables can be found, which is ground below or air above. And whether with that property right they can charge Zio licensing fees. And with this record where there's no record of harm caused by Zio installation or the existing cables. And there's no, they couldn't establish even imminent harm such that they could even have standing to bring these claims. This kind of speculation that things could happen if there's not coordination isn't based on the record and wouldn't serve the basis to create a new Indiana property law. You mentioned the word standing. And the district court dismissed for lack of standing. If I understand the district court's rationale, it is that CSX loses standing, so it lacks standing. How is that consistent with the Supreme Court's decision in Bell v. Floyd? They lack standing because they don't have a property interest to assert. In other words, they lose on the merits. How is that consistent with the Supreme Court's decision in Bell v. Floyd? Which expressly rejected that view that if you don't have the substantive claim you assert, you therefore lack standing. You have standing if you suffer injury caused by the defendant and redressable by the court. Three things. CSX says it is injured. It says it's caused by ZAO and it's redressable by a favorable judicial decision. What more is needed for standing? They're not able to make those showings here because... Right, because in your view they lose on the merits. I understand that. What does that have to do with standing? It's a simple question. Standing aside, as you know, they would lose on the merits. But say you're a personal injury claimant and you say, I'm harmed because this person's car hit me. But there's record proof that no such incident occurred. The allegation. That would turn into merits, too. Correct. You're hypothetical. They are bound up together. You're right. They're not bound together. Not necessarily bound together, but... The holding of Bell is that they are not bound together. That's correct. That's just the view of the Supreme Court. And we're an inferior court. Correct. But even if standing aside, CSX doesn't have a valid case to bring forward. You can't say standing aside. The district judge dismissed this case for lack of standing. Unless I am seriously misunderstanding Bell, that holding was grievously erroneous. Now, it may be that you'd be even happier with a decision on the merits. Because a case dismissed for lack of standing is dismissed without prejudice. Which means that the railroad can start all over again in any other court it wants, including state court. And you would have to litigate all over again. Is that what you want? No, of course not. I didn't think so. But here, we do have the same issues involved on the merits, whether it's a dismissal for standing on a motion to dismiss, which came after the district court made the findings and made the summary judgment ruling that there was no property right. How would we be able to reach the merits? I mean, this court could find that standing exists under Bell and then reach the merits based on the same information in the summary judgment record, since it is a de novo review. And then the same on the motion to dismiss record. There was an evidentiary hearing. But the court could consider that evidence and then reach the merits. And ultimately, the same problem exists is that if without a property right, there's no trespass. And without a property right, there's no right to license. And so there's no civil theft. And CSX would be in the same position, whether the court called it standing or something else. I'll talk briefly about the statute of limitations, which is another basis to dismiss many of the claims. And CSX talks about this continuing trespass. But it's not based in Indiana law either. Well, we have to accept that they have a property interest before we can do the continuing trespass in the ground below as well as the above. Yes. If the court doesn't accept that they have a property interest to enforce, none of this matters, because all of the easement claims remain out of the case. But the statute of limitations did apply to some of the fee claims as well. And so here we have the Porter case, which says that upon construction, the statute of limitations starts to run. And the Snyder case also says that when you have a continuing wrong, it won't prevent the statute of limitations from running when the plaintiff learns of facts that would have told them. And here we have the markers out of the ground that the district court found were sufficient to tell CSX that they had a claim that they needed to bring. And turning just briefly to practicality concerns. Oh, dear. This discussion got me to go back and look at the judgment in this case. The judgment says, final judgment. Final judgment is hereby entered, and this case is terminated. Is that with or without prejudice? If it's no standing, it's without prejudice. If it's on the merits, it's with prejudice. But the statement, final judgment is hereby entered, doesn't tell you what the judgment is. Is there a problem here? Of course, no one has complained about this language, but the language of the judgment can be dispositive. That's right, that no one has complained about the language, which is partially why I hadn't focused on it. Procedurally, what happened here is there were certain claims that were left. The fee sites that were not barred by the statute of limitations, those claims were settled. And so then the parties created a judgment that the court entered so that this appeal could go forward, so that these issues could be decided by this court. My time is running out, so unless the court has further questions, we'd ask that the court affirm. Thank you, Ms. Benz. Mr. Scadro, anything further? Very briefly, Your Honor. And I think we should start right where I last was. What does the judgment in this case provide? To be sure, the earlier district court decision, like the summary judgment decision from April of 2024. I asked about the judgment, not the opinion or decision. Is there any other judgment than the one I'm looking at, the one from March 24? No, I believe that is the Rule 58 judgment in this case, Your Honor. Yes. It's the most useless thing you can imagine. And parts of the case were dismissed previously on 12b1 jurisdictional grounds. And we, of course, agree, as we say in our brief, that the court erred in concluding that any of this was jurisdictional under the statute of limitations. But the final judgment doesn't say whether it was dismissed with or without prejudice. It does not, Your Honor. It does not. If I could very briefly, there's no dispute on the part of CSX, excuse me, on the part of ZAO, that they're taking from someone. They would say they're taking from without any record evidence of an effort to get permission from the fee owners. They're taking from the fee owners without a licensing fee, without knowledge, and so forth. The notion that CSX was aware of the construction is incorrect. On this record, as the lower court opinions also show, the sites that are at issue in this case involve proceeding without CSX's permission and often, if not always, without CSX's knowledge. That brings me to a second point. The key here is the right to exclude. Putting licensing to one side, what is most important from CSX's perspective is the safety and operation of this railroad. And this would be the first decision to say that harm arising from disrupting, without knowledge of the railroad, both subsurface and aerial rights, that doing so is not within the scope of the easement to exclude. I'm puzzled. What in the judgment says that? Or indeed, what in the judicial decision, judicial opinion, says that? If CSX were relying on harm, I could understand this litigation. But it is seeking a judgment that it has a right to exclude without any need to show harm. Correct, Your Honor. And that is following the lead of courts across the country. I recognize this specific issue has yet to come up in the Indiana courts, although the one federal court to address it under Indiana law has said that there is a licensing right. But even short of the licensing right, the Tenth Circuit, the Ninth Circuit, what have they said? The Vermont courts, they've said, look, the reason that there's a right to exclude that's robust is because without it, we'd have to wait until an accident. But Indiana law has already answered this question as to the scope of the easement. It's determined by the purpose. And opportunity after opportunity, have you been able to drill down either in writing or what was the purpose? And I have yet to hear the answer to that question. Sure. So I know I'm over my time. As long as we're asking questions, you can give answers. Thank you, Your Honor. The answer is twofold. One, again, Howard is that decision. And Howard was dealing, the purpose point was coming out of that statute in particular. That's a limitation that common law does not impose. But even if it did, as court after court has recognized, the most expressed statement being LKL, as court after court has recognized, exclusion and the entirety of the easement is part of operating the railroad. If Howard's going to go so far as to say that as a matter of Indiana law, running telephone lines is consistent with the purpose of running a railroad, then to be sure, safely operating the railroad must be part of that purpose. But of course, you've come back to where I began. If that's true about railroads, that's equally true about high-tension electric lines. Preventing harm to those lines is an important part of that transportation corridor. So why doesn't an electric line have the same right to exclude, oh, say, to exclude a railroad as a railroad would to exclude an electric line? Sure. And there are statutes that deal with some of these intersections, literally and figuratively, including, and I mentioned the Louisville case. That is actually an Indiana Supreme Court case, though it's the Louisville Railroad. In that case, that dealt with precisely that, your Honor's issue. There was a statute that permitted the right-of-way, the intersection of the highway with the railroad, and the railroad could not object to that. But they were on notice, and they had the opportunity to ensure that things were done safely. That's equally true of the conduit that they talked about earlier. But you're arguing for a right to exclude, not for a right to notice. Correct, your Honor. The common law right. All right. We have your position. The right to exclude. Thank you, your Honor. The case is taken under advisement.